### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER S. S., | ) |
|  Plaintiff, | ) ) ) |
| v. | ) ) Case No. 21-cv-00367-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|  Defendant. | ) |

## OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christopher S. S. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability benefits under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A) (regarding disabled individuals). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520.[1] To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).[2] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] *See generally* 20 C.F.R. § 416.920 for Title XVI. (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation for Title XVI.)

[2] *See generally* 20 C.F.R. § 416.960 for Title XVI.

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits on June 13, 2014, with a protective filing date of February 20, 2014. (R. 11, 183-88.[3]) In his applications, Plaintiff alleged he has been unable to work since December 6, 2012, due to conditions including depression, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, anxiety, hypertension/high blood pressure, knee conditions, degenerative disc disease in his back, short term memory difficulties, a hiatal hernia, tinnitus, degenerative arthritis of the spine, limited ability to extend his thigh, obstructive sleep apnea, thermal burns to his right arm, skin grafting, and osteoarthritis. (R. 183, 237, 245.) Plaintiff later amended his alleged onset date to October 1, 2013. (R. 233.) Plaintiff was 49 years old at the time of the ALJ decision being appealed. (R. 183, 3000.) He has a college education and past relevant work as a Receptionist, Pastoral Assistant, Management Trainee, and Caseworker. (R. 238, 3030-31.)

---

[3] Only the Title XVI application is contained in the record.

Plaintiff's claims for benefits were denied initially and upon reconsideration. (R. 126-34, 138-43.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on March 2, 2016. (R. 27-67, 144.) The ALJ denied benefits and found Plaintiff not disabled. (R. 11-21.) Plaintiff's appeal of that decision was remanded to the Commissioner on her motion. (R. 3062-65.) The Appeals Council then remanded the case to the ALJ for her to resolve certain additional issues.[4] (R. 3068-70.) The ALJ held a second hearing on December 10, 2018. (R. 3007-36.) Thereafter, the ALJ issued a decision denying benefits and again finding Plaintiff not disabled. (R. 2979-3000.) The Appeals Council denied review on July 1, 2021 (R. 2970-74), rendering the Commissioner's decision final, 20 C.F.R. §§ 404.981, 416.1481. Plaintiff appeals.

## III. The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2017. (R. 2982.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2013. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spine; (2) obesity; (3) bipolar disorder; and (4) posttraumatic stress disorder. (R. 2982-84.) The ALJ determined that Plaintiff had other medically determinable impairments—including anxiety—that were not severe. (*Id.*) At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment. (R. 2984-87.)

---

[4] Plaintiff does not argue the ALJ failed to comply with this Appeals Council Order. *See Noreja v. Comm'r*, 952 F.3d 1172, 1178 (10th Cir. 2020) (review of non-compliance with an Appeals Council order is within the court's jurisdiction under 42 U.S.C. § 405(g)).

4

The ALJ concluded Plaintiff had the RFC to perform "less than the full range of medium work" with additional physical limitations[5] and the following mental limitations: "The claimant can adapt to a work situation; can perform simple and some complex tasks (defined as semi-skilled); interact appropriately with co-workers and supervisors; and interact appropriately for occasional public contact." (R. 2987.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 2988-98.)

At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 2998.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Janitor, Laundry Worker I, and Hand Packager. (R. 2998-99.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 2999.)

IV.   Issues

Plaintiff raises three allegations of error in his appeal: (1) the ALJ erred at step two and beyond by failing to consider his anxiety (ECF No. 14 at 3-5); (2) the RFC, which limited Plaintiff to "simple and some complex tasks (defined as semi-skilled)" was not supported by the prior administrative medical opinions or the objective medical evidence (*id.* at 5-8); and (3) the ALJ erred by declining to include Plaintiff's moderate "paragraph B" limitations in the RFC or the step-five hypothetical (*id.* at 8-9).

V.   Analysis

   A.   **Anxiety at Step Two and Beyond**

Plaintiff maintains that "[t]he ALJ's determination at step two of the sequential evaluation process failed because she did not properly consider the entire record and all

---

[5] Plaintiff does not challenge the ALJ's determination of his physical limitations.

of Claimant's impairments" (*id.* at 3), specifically his anxiety (*id.* at 4-5).[6] The ALJ, however, did not ignore Plaintiff's anxiety complaints, but considered them at step two and beyond. It appears Plaintiff is simply arguing that the impairment should have been considered and weighed *differently*.

To the extent Plaintiff is asserting the ALJ should have found his anxiety severe at step two, this argument fails to show reversible error. "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (finding no error where ALJ found six other impairments to be severe). This is because, after step two, the ALJ considers the combined effect of all impairments (severe or not). *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008) (unpublished);[7] *see also* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity").[8] Here, the ALJ found multiple other impairments to be severe. There can be no error at step two.

Plaintiff's arguments beyond step two also fail. Contrary to Plaintiff's claims, the ALJ did not ignore his reported symptoms of anxiety after step two. (*See* R. 2988, 2991-95, 2997.) Plaintiff walks through the exhibits cited by the ALJ and points out portions

---

[6] Plaintiff also briefly references the impacts of his alleged ADHD (*id.* at 4), which the ALJ found not to be a medically determinable impairment (R. 2984). Plaintiff provides no argument disputing this finding, and the Court declines to consider Plaintiff's underdeveloped claim. *See Sturgeon v. Colvin*, No. 15-CV-52-PJC, 2016 WL 1248905, at *5 (N.D. Okla. Mar. 29, 2016) ("[a] Social Security claimant must adequately develop arguments before a district court" (citing *Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009)).

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[8] *See generally* 20 C.F.R. § 416.945 for Title XVI.

he argues do not speak to "optimal medication or well-controlled anxiety." (ECF No. 14 at 4-5.) The records Plaintiff highlights indicate some complaints of anxiety. (*See, e.g.*, R. 2331-32 (Plaintiff complained of a panic attack the same day as the record cited by the ALJ for the proposition that Plaintiff's "anxiety was well-controlled with medications between 2014 and 2018").) But, on the whole, there is substantial evidence supporting the ALJ's finding that Plaintiff's anxiety only caused a minimal limitation in his ability to perform work activities. (*See, e.g.*, R. 2247 (reporting Plaintiff "doesn't feel anxious"), 3411 (Plaintiff's anxiety "appear[ed] stable"), 3443 (Plaintiff reported he feels "his mood swings and anxiety are on good control"), 3452 (Plaintiff's mood on examination is relaxed)). The ALJ is not required to discuss every piece of evidence. Instead, she must discuss the evidence on which she relies, the uncontroverted evidence she does not use, and the significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ's decision here—which explicitly contemplated Plaintiff's anxiety—was not in error.

B.  **Medical Evidence and the RFC**

Plaintiff next faults the ALJ's evaluation of medical evidence in forming an RFC that limits Plaintiff to "simple and some complex tasks (defined as semi-skilled)".[9] Specifically, Plaintiff contends the ALJ incorrectly incorporated the mental limitations set forth in the prior administrative medical opinions; gave insufficient weight to the St. Louis University Mental Status ("SLUMS") examinations; and selectively highlighted record evidence demonstrating Plaintiff's intact memory, concentration, and attention,

---

[9] Plaintiff argues this "fatally flawed her determinations at Steps Two through Five of the sequential evaluation process" (ECF No. 14 at 5), but her arguments all go to whether the ALJ erred in finding Plaintiff capable of such in the RFC and the resulting step-five jobs.

7

while ignoring evidence of his mania, depression, impaired attention and concentration, anxiety, and memory issues. (ECF No. 14 at 5-8.) The Court finds the ALJ sufficiently considered the voluminous administrative record and did not ignore evidence. The remainder of Plaintiff's attacks are, again, merely requests for the undersigned to reweigh evidence. The undersigned finds no error.

    **1.**    **Limitations in prior administrative medical findings**

Plaintiff first focuses on the ALJ's incorporation of mental limitations set forth in Drs. W. Farrell and Bruce Lochner's prior administrative medical opinions. (*Id.* at 5-6.) As Plaintiff notes, both Farrell and Lochner opined that Plaintiff retained the mental capacity to perform "1-3 step instructions for 2 hour periods over an 8 hour day . . . ." (R. 77, 104.) Due to differences in their public interaction limitations, the ALJ gave Dr. Farrell's opinion "some weight" and Dr. Lochner's opinion "great weight." (R. 2996.) Considering these opinions, the ALJ found Plaintiff capable of performing simple and some complex tasks. (R. 2987.) At step five, the ALJ then found Plaintiff capable of performing three jobs, all unskilled and all requiring Level 2 reasoning. (R. 2999.) *See* Dictionary of Occupational Titles ("DOT") § 381.687-018, 1991 WL 673258 (4th ed. 1991) (Industrial Cleaner); DOT § 920.587-018, 1991 WL 687916 (Hand Packager);[10] DOT § 361.684-014, 1991 WL 672983 (Laundry Worker I).[11] Plaintiff does not allege an apparent conflict between the RFC adopted by the ALJ and the DOT reasoning level. Instead,

---

[10] The ALJ incorrectly refers to the Hand Packager job as appearing at DOT § 290.587.018. (R. 2999.)

[11] All three jobs have a specific vocational preparation ("SVP") level of 2, which means "[a]nything beyond short demonstration up to and including 1 month." *See id.* Work at SVP level 2 is considered unskilled work. *See* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000). While the ALJ defined Plaintiff's ability to perform simple and some complex tasks as semi-skilled work, Plaintiff's arguments focus on following instructions and the DOT reasoning level.

Plaintiff appears to argue that the RFC should have limited Plaintiff to "1-3 step instructions," which Plaintiff asserts would have ruled out the jobs found at step five.[12] (ECF No. 14 at 5-6.)

Without deciding whether the RFC should have included additional limitations, the premise of Plaintiff's argument fails. Reasoning level in the DOT refers to the "Scale of General Education Development (GED) Reasoning Development" required for a job. DOT, app. C, 1991 WL 688702 (4th ed. 1991). At Level 2, an employee can:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*Id.* This is a step up from Level 1, where an employee can only:

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id.* Plaintiff argues that "[c]arrying out detailed instructions and dealing with problems would . . . be in excess of the . . . limitation of performing 1-3 step instructions." (ECF No. 14 at 6.[13]) This argument does not follow from the DOT's treatment of reasoning levels. As Level 1 allows for one- to two-step instructions, it is logical to assume that Level 2 must encompass <u>at least</u> three-step instructions. Plaintiff offers no legal argument for his conclusion otherwise.

---

[12] Plaintiff makes no argument or reference to the time limitation articulated by Drs. Farrell and Lochner (R. 77, 104), and the Court does not consider them. The scope of review is limited to issues Plaintiff adequately presents on appeal. *See Kearns v. Colvin*, 633 F. App'x 678, 681 (10th Cir. 2015) (unpublished) ("an argument that was never raised before the district court is . . . waived").

[13] Plaintiff also asserts there "is no indication" in the limitation that he could "handle problems or variables." (*Id.*) Plaintiff, however, points to nothing in the record indicating that he cannot handle a few concrete variables.

9

### 2. SLUMS Testing

Equally unpersuasive are Plaintiff's contentions regarding the SLUMS testing, which amount to requests for the Court to reweigh evidence. Plaintiff admits the ALJ referenced his SLUMS scores but argues she did "not appreciate how close Claimant's scores are to a person functioning with dementia." (*Id.* at 8.) Plaintiff appears to argue that, had the ALJ properly understood the scores, she would have limited Plaintiff to "1-3 step instructions at most." *Id.* As noted above, even <u>if</u> such a limitation were appropriate, it would have no effect on the step-five jobs and, therefore, no effect on the finding of non-disability.

In any event, the ALJ considered Plaintiff's SLUMS testing (R. 2995), where he was assessed with a mild cognitive impairment (R. 3330). The ALJ explicitly acknowledged this testing as well as a subsequent request for a "neuropsychological examination." (R. 2995 (citing R. 3323).) Moreover, the ALJ referenced the CT scan highlighted by Plaintiff, which revealed "mild-to-moderate diffuse cerebral and cerebellar atrophy." (*Compare* ECF No. 14 at 6 *with* R. 2995.) Plaintiff points to no finding from a medical professional regarding any limitations resulting from the SLUMS testing or the CT scan. As such, there is sufficient evidence to support the ALJ's decision. The Court will not reweigh such evidence.

### 3. Picking and choosing evidence

Finally, Plaintiff argues the ALJ was "picking and choosing only the evidence which fits her narrative and ignoring and excluding evidence favoring Claimant." (ECF No. 14 at 7.) Specifically, Plaintiff argues the ALJ cited only instances where Plaintiff presented with intact memory, concentration, and attention at the exclusion of records showing mania, depression, anxiety spells, memory issues, mood issues, and stress. (*Id.*) But this

was not the case. In addition to the numerous instances where Plaintiff presented with intact mental faculties (R. 2991-95[14]), the ALJ also discussed Plaintiff's self-reported stress and memory difficulties (R. 2988-89), his anxiety attacks that once required hospitalization (R. 2991-92), and his impaired mood and memory upon examination (R. 2991-95[15]). While the ALJ did not outline every instance where Plaintiff complained of anxiety or memory problems, it is discernable from her decision that she was aware of these issues[16] and that they had a hand in forming the final RFC.[17] Even if the ALJ could have cited more examples from the expansive record, a failure to do so is not reversable error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where . . . we can follow the adjudicator's reasoning . . . and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). As such, Plaintiff's argument fails.

  **C.**  **Inclusion of Moderate "Paragraph B" Limitations in the RFC and Step-Five Hypothetical**

Lastly, in an argument that somewhat rehashes those already raised, Plaintiff contends the RFC and step-five hypothetical failed to account for his mental limitations,

---

[14] Often presenting with good judgment, insight, concentration, and memory; relaxed mood; and anxiety that was under control. (*Id.*)

[15] Including instances where Plaintiff reported he was still stressed despite improvements mentally, that his memory was a challenge for him, that he was experiencing depression and agitation after discontinuing his ADHD medication and benzodiazepines, and that his mood was bad because of medication changes. (*Id.*)

[16] (*See, e.g.*, R. 2995 (citing the finding that Plaintiff had a mild cognitive impairment).)

[17] (*See* R. 2998 ("the above residual functional capacity assessment is supported by . . . the treatment and examination notes[] and the activities of the claimant as reported to medical providers").)

particularly the moderate "paragraph B" limitations the ALJ found at step three.[18] (ECF No. 14 at 8-9.)

At steps two and three, the regulations prescribe a "special technique" to determine severity or non-severity of mental impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). This technique includes rating degrees of limitation in certain areas. *See* 20 C.F.R. § 404.1520a.[19] At step three, these degrees of limitation are then used in the so-called "paragraph B" analysis. *See generally* Listing 12.00(A)(2)(b), 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff does not argue the ALJ erred at steps two or three.

Instead, Plaintiff argues the ALJ did not properly carry forward the moderate limitations that he found in the "paragraph B" analysis into the rest of his decision. But "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment . . . ." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The focus of the RFC should be on work-related mental activities, which include "the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Wells*, 727 F.3d at 1069 (quoting SSR 96-8p, at *6).

The Court finds no error in the ALJ's consideration of Plaintiff's mental limitations in the RFC evaluation or at step five. At step three, the ALJ determined that Plaintiff was moderately limited in two of the four "paragraph B" criteria—(1) interacting with others and (2) concentrating, persisting, or maintaining pace. (R. 2985-87.) Then, the ALJ

---

[18] Plaintiff also argues that he should have been limited to simple work (while simultaneously arguing this would not be sufficient) and that the ALJ failed to account for his mild cognitive impairment. (*Id.* at 9.) These arguments were already addressed in the preceding sections and will not be addressed again here.

[19] *See generally* 20 C.F.R. § 416.920a for Title XVI.

adequately considered the evidence of Plaintiff's mental limitations (R. 2988-98), incorporated those findings into the RFC in the form of work-related limitations (R. 2987), and utilized the RFC as a basis for the hypothetical to the VE (R. 3031-32). A finding of moderate limitation at step three does not inherently equate to a work-related functional limitation in the RFC. *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). In any event, Plaintiff's claim that the ALJ failed to include limitations relating to interacting with others or maintaining pace is simply incorrect.

Regarding Plaintiff's ability to interact with others, the ALJ limited him to work that involved only "occasional" public contact. (R. 2987.) Moreover, the jobs the ALJ found Plaintiff capable of performing at step five all involve a "people" rating of 8, which means "Taking Instructions-Helping." *See* DOT §§ 381.687-018, 920.587-018, 361.684-014. The "people" rating is graded on a scale of 0-8, with 8 being the "lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (unpublished). The ALJ accounted for Plaintiff's work-related limitation in interacting with others, and Plaintiff has failed to show any other functional limitations were required by the record.

Similarly, Plaintiff's argument that the ALJ failed to include a limitation for his ability to concentrate, persist, or maintain pace falls flat. The RFC limited Plaintiff to simple and some complex tasks. (R. 2987.) The Tenth Circuit has held that "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving 'simple tasks with some detail.'" *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (unpublished). By similarly including a limitation to "simple and some complex tasks" in the RFC assessment (R. 2987), the ALJ accounted for the moderate

limitation she identified at step three. Plaintiff does not show anything more was required.

Thus, the ALJ's formulation of the RFC was supported by substantial evidence.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 23rd day of February, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT